## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

Gary Betts and Earl Betts,

Plaintiff,

v.

Rebecca Wigget, in her official capacity as Boone County Coroner, and Boone County

Defendants.

Case No.: 23-cv-50418

Judge Iain D. Johnston

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gary and Earl Betts brought this Second Amended Complaint ("Complaint") against Rebecca Wigget in her official capacity as Boone County Coroner and Boone County, alleging deprivation of property and tort claims. Defendants moved to dismiss the Complaint under 12(b)(1) and 12(b)(6). For the reasons below, the Motion is granted without prejudice.

**Background**

The Court takes the following allegations from the Complaint and accepts them as true for the purpose of deciding this Motion.

Louise Betts was heinously murdered in 1977. Dkt. 53 ¶ 6. Plaintiffs Gary and Earl Betts are Louise Betts' surviving siblings. *Id.*, pg. 1. The Betts family, including her now-deceased parents, buried Louise on April 3, 1978. *Id.* ¶ 11. They believed—or at least had no reason to doubt—that then-Boone County Coroner Wesley Hyland (now deceased) appropriately handled Louise's remains and left them intact for the funeral. *Id.* ¶ 14. Forty-four years later, on November 17, 2022, the Coroner's Office revealed the horrific reality that Hyland retained Louise's skull, along with the skulls of at least two others. *Id.* ¶¶ 12–14.

**Procedural History**

1

On November 17, 2023, Betts sued Boone County and "The Estate of Wesley Hyland, Boone County Coroner."[1] Dkt. 1. On May 16, 2024, Betts filed an amended complaint, naming only "Rebecca Wigget, in her official capacity as Boone County Coroner," and Boone County. Dkt. 36. Betts filed this Second Amended Complaint on July 3, 2024, naming those same two. Dkt. 53.

**Analysis**

The Coroner filed this Motion under 12(b)(1) and 12(b)(6). The Court first addresses the 12(b)(1) challenge and then turns to the 12(b)(6) argument. *See Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998) ("When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first.").

      a.       *12(b)(1)*

The Coroner asserts Betts lacks standing to bring this suit. Article III limits federal judicial power to certain "cases" and "controversies." U.S. CONST. art. III; *Lugan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). To establish standing, a plaintiff must show injury, causation, and redressability. *Id.* As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the Article III elements. *Silha v. ACT*, 807 F.3d 169, 172–73 (7th Cir. 2015). Defendants can raise either a factual or facial challenge to standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). On a facial challenge, the court looks only to the complaint, accepts the allegations as true, and assesses whether they establish standing. *Id.* Neither party identifies the type of challenge, but the Court considers it a facial one.

Focusing on the injury prong, the Coroner argues that Betts lacks standing because 1) a dead body is not "property" for Count I's § 1983 Fourteenth Amendment deprivation purposes, and 2) even if it were, Betts never held an interest in that property, lacking standing for Count I or Count II (intentional interference with the right to possess a corpse). The Court addresses each issue in turn.

      1.      "Property" Interest

Betts' § 1983 claim alleges that the Coroner deprived Betts of property without due process, violating the Fourteenth Amendment. The Coroner doesn't argue that the deprivation comported with due process, so the only issue is whether a dead body (or

---

[1] To avoid a linguistic quagmire (the Bettses's? the Bettses'?), the Court refers to Plaintiffs collectively as "Betts" and refers to them in the singular. And except where otherwise noted, it refers to the County and the Coroner collectively as "the Coroner."

portions thereof) constitutes "property." Property rights don't originate in the Constitution; rather "they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021).

The Parties briefly dispute whether (and if so, to what extent) Illinois recognizes a property interest in a dead body. The Coroner asserts that Illinois doesn't confer a property right, but rather a "right of possession of a decedent's remains for the purpose of making an appropriate disposition." Dkt. 57, pg. 4. Both Parties rely on *Cochran v. Securitas Servs. USA, Inc.*, 93 N.E. 3d 493 (Ill. 2017), and 755 ILCS 65/5 (providing "a right to control disposition").

The *Cochran* court addressed the necessary mental state in an action for tortious interference with the right to possess a corpse. 93 N.E. 3d, at 494. The court noted that "the cause of action has a settled place in Illinois law, and it rests upon the principle that while in the ordinary sense, there is no property right in a dead body, a right of possession of a decedent's remains devolves upon the next of kin in order to make appropriate disposition." *Id.* at 497. That court cited earlier Illinois decisions discussing the nature of the property interest. *See Mensinger v. O'Hara*, 189 Ill. App. Ct. 48, 53–54 (1914) ("[A] dead body is not considered as property, in the ordinary, technical sense in which the word is usually employed, yet the law does recognize a right, somewhat akin, perhaps, to a property right…."). At a minimum, then, Illinois recognizes an interest that's similar to but not the same as an ordinary property interest.

So, really the question is whether § 1983 permits deprivation of property suits based on property-like interests. Thankfully, there's no readily discoverable caselaw on this particular issue. And the Parties don't belabor the property point, so neither will the Court. It finds that in Illinois, a court may treat a dead body as property for Fourteenth Amendment deprivation purposes.

### 2. Injury

The Coroner contends that even if a dead body constitutes property, Betts never held an interest in that property, so he personally never suffered the legal injury associated with Counts I or II. Whether Betts held an interest turns on when the right accrued: If the right accrued at the time of burial, then the interest vested in the adult next-of-kin, i.e. Louise Betts' parents, not Plaintiff Betts (absent the discovery rule, discussed later). *See* 755 ILCS 65/5(5)–(6). In contrast, if the right accrued at the time of discovery, then because Louise's parents are no longer alive, the interest vested in Betts. *Id.*

Illinois caselaw doesn't provide a direct answer. Citing language in *Cochran*, the Coroner argues that the nature of the injuries in this case is only a function of interference with burial or disposal. *Cochran*, 93 N.E. 3d, at 494 ("The actionable wrong is the interference with the plaintiff's right to possess the decedent's remains, *not* the infliction of the resulting mental distress."). So, the Coroner contends, the injury occurred (and thus the right vested) when the skull was removed—not at discovery—and therefore Betts lacks standing because only his parents legally suffered an injury.

But *Cochran* addressed whether a plaintiff could bring a claim based on a defendant's mere negligent (as opposed to wanton or willful) conduct in mishandling a corpse and the resulting emotional harm. That, in turn, implicated the infliction of emotional distress doctrine. *See id.* at 503. ("[T]he critical question is whether the theory of liability set forth in [the] complaint is NIED or, as in a wrongful birth case, some other tort for which emotional distress is simply an element of plaintiff's damages. This is because if plaintiff's claim falls into the latter of these categories, there is no principled reason to disallow the recovery of emotional distress damages upon proof of ordinary negligence."). It's in that context that the *Cochran* court concluded that "[t]he actionable wrong is the interference with the plaintiff's right to possess the decedent's remains, *not* the infliction of the resulting mental distress." That finding has little, if any, bearing, on the question of when the claim accrues.

In urging the Court to tie the accrual date to when Betts learned of the injury, Betts directs the Court to analogous cases in which Illinois courts applied the discovery rule. In general, a statute of limitations begins running when the party has a right to invoke the court's aid. *Fed. Signal Corp. v. Thorn Automated Systems, Inc.*, 693 N.E.2d 418, 421 (Ill. App. Ct. 1998) (citing *Cassidy v. Derek Bryant Ins. Brokers, Ltd.*, 613 N.E.2d 1201, 1208 (Ill. App. Ct. 1993)). For most torts, the cause of action accrues when the plaintiff suffers injury. *Cassidy*, 613 N.E. 2d at 1208. But if the plaintiff didn't know of the injury when it occurred, courts may apply the discovery rule. *Id.* The rule allows the court to use the date upon which the plaintiff knew or should have known that he was injured as the start clock. *Id.* Illinois courts have applied the rule across many issues "to alleviate what has been viewed as harsh results resulting from literal application of the statute." *Independent Trust Corp. v. Stewart Infor. Servs. Corp.*, 665 F.3d 930, 938 (7th Cir. 2012).

Those cases suggest that Betts has standing because the claims accrued upon discovery, even if the "injury" occurred decades before. The Coroner doesn't substantively respond to Betts' discovery rule argument. To be fair, there might be daylight between the accrual dates for statute of limitations purposes and rights-

4

vesting standing purposes. In theory, the right to sue may have always and forever vested with the Betts parents at the time the coroner mishandled the body, even if the discovery rule extended the time in which they could bring it. But that's well beyond the scope of this opinion. These Illinois cases convince the Court that the right vested in Betts when he learned of the injury and therefore has standing.[2]

    *b.*    *12(b)(6)*

Federal Rule of Civil Procedure 8 requires only that a plaintiff's complaint contain a "short and plain statement" establishing the basis for the claim and the Court's jurisdiction. Fed R. Civ. P 8(a). A plaintiff will survive a Rule 12(b)(6) motion if the plaintiff alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). The Court addresses the two arguments that comprise the 12(b)(6) argument: 1) statute of limitations, and 2) failure to allege sufficient facts.

    1)    Statute of Limitations

Assuming Betts has standing, the Coroner argues that the claims against her (not the County) are still barred by the statute of limitations. District courts can be on thin ice when dismissing actions under Rule 12(b)(6) based on affirmative defenses like the statute of limitations. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) ("We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)."). "The proper way to seek dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state a claim. Rather, the defendant should answer and then move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 964-65 (7th Cir. 2020). "When the allegations of a complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644

---

[2] The Court also found *Melfi v. Mount Siani Hosp.* persuasive. *See* 64 A.D.3d 26, 39 (N.Y. App. Div. 2009) (finding that the common law right of sepulcher accrues upon discovery, because it's an emotional injury and therefore "axiomatic that a plaintiff must be aware of the interference" before he can actually experience distress).

F.3d 577, 581 (7th Cir. 2011). A statute-of-limitations defense is appropriate in a 12(b)(6) motion where the allegations set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). All Parties agree that these claims are subject to a one-year statute of limitations. The Court isn't so sure that this is correct, but any disagreement doesn't make a difference in the outcome of this issue. The issue is whether the ostensibly untimely claims against the Coroner in this Complaint can relate back to timely claims in the initial complaint.

Betts discovered the injury on November 17, 2022. Exactly one year later, on November 17, 2023, he timely sued Boone County and "The Estate of Wesley Hyland, Boone County Coroner." On May 16, 2024, Betts filed an amended complaint, again naming the County, as well as "Rebecca Wigget, in her official capacity as Boone County Coroner." Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978). Because Betts added Wigget outside the limitations period, the Coroner contends that the claims are untimely.

In Response, Betts argues that adding the Coroner was "superfluous," because he had already named the County. And, according to him, the Coroner is an "employee" or at least "controlled by" Boone County. Even if that's not the case, Betts asserts, the amendment adding the Coroner relates back under 15(c) to the original filing.

Because the 15(c) argument is persuasive, the Court won't try to untangle Illinois' "knotty" municipal patchwork. *See Carver v. Sheriff of LaSalle County, Ill.*, 324 F.3d 947, 948 (7th Cir. 2003). 15(c)(1)(c) allows an amendment to relate back to an original filing when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if [the claim arises out of the same transaction or occurrence] and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Again, Betts initially sued "The Estate of Wesley Hyland, Boone County Coroner" and Boone County. The Coroner doesn't claim that she lacked notice of the suit in a way

that would prejudice her, nor would that argument be convincing under the circumstances. Her only contention is that Betts didn't make a 15(c)(1)(c)(ii) mistake, because he chose to sue the estate and not the Coroner directly. But as Betts notes "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010). So, the Court finds that the claims against the Coroner relate back to the initial complaint.

### 2) Failure to Allege Sufficient Facts

The Coroner and the County argue that Betts' Complaint doesn't explicitly identify which Party is liable for Count I (§ 1983),[3] and so the Court should dismiss it altogether. In Response, Betts clarified that he brought the claim against both entities. Without elaboration, in their Reply, the Coroner and County stress that "Plaintiffs fail to assert involvement or responsibility of either named Defendant as it relates to Count I."

The Court understands the Coroner and the County to be saying that they aren't responsible for the actions of a now-deceased former coroner. Though the Coroner and County don't employ the precise legal rule statements, they're substantively correct: in order to establish § 1983 liability under the *Monell* doctrine, a plaintiff must connect a deprivation of a constitutional right to a municipal action in the form of (1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policy making authority. *Stockton v. Milwaukee Cnty*, 44 F.4th 605, 617 (7th Cir. 2022). A plaintiff can't rely on *respondeat superior* liability. *Id.* Betts apparently understands that too, employing conclusory language like "Plaintiffs allege that the Coroner was a policy making official and that the Boone County Coroner' Office had a pattern, practice, policy or custom of wantonly withholding body parts."

Betts' claim against the Coroner in her official capacity and the County is a *Monell* claim, even if neither party cites it. That case and its progeny require a plaintiff to establish that a municipal entity took or ratified official action. True, that issue becomes more complicated when the County Coroner and a coroner are closely related if not one in the same (e.g. does a Coroner's wrongful behavior still equate to official policy-making?). But that's Betts' job. The Court can't conclude, based on this Complaint, that the then-Coroner or the County acted in a way that caused a

---

[3] The Court (and apparently Parties) focus on Count I because it's the basis for jurisdiction; if it falls, there's no reason Count II belongs in federal court.

constitutional deprivation under *Monell*. So, the Court dismisses the Complaint without prejudice. Betts has one more opportunity to properly plead a *Monell* claim against the County and/or the Coroner.

**Conclusion**

For the reasons above, the Court grants Defendants' Motion without prejudice. It gives Betts one last attempt to state a claim against the Coroner or the County so long as the attempt is consistent with Rule 11. Betts is given until December 9, 2024 to file any amended complaint. If no amended complaint is filed by that date, the dismissal will convert to dismissal with prejudice.

Entered: November 8, 2024                      By: _____

Iain D. Johnston
U.S. District Judge